UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES WELDON STRICKLER and
JUDITH ANNE STRICKLER,

      Plaintiffs,

v.                                                          Case No.:  2:18-cv-781-FtM-38MRM

WALMART, INC.,

      Defendant.

_____/

## OPINION AND ORDER[1]

     Before the Court is Defendant Walmart, Inc.'s Motion for Summary Judgment (Doc. 38), Plaintiffs James and Judith Strickler's response in opposition (Doc. 41), and Walmart's reply (Doc. 43).  Also here are Walmart's Motions to exclude or limit certain expert testimony, to which Stricker never responded.  (Docs. 36; 37).  Finally, Strickler's Motion to exclude expert testimony (Doc. 39) and Walmart's opposition (Doc. 42) are at issue.  For these reasons, the Court denies all the Motions except one of Walmart's motions to exclude.

## BACKGROUND

     This is a trip-and-fall case.  Strickler went shopping at Walmart.  He had an "altered gait" from a previous hip replacement and walked with a cane.  So once inside, Strickler rode a motorized shopping cart.  When nature called, he parked and walked a few steps towards the restroom.  Strickler fell and suffered serious injuries.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

The main questions are how and where he fell: either at the entrance to the restroom area or near the men's room doorway.  If a picture is worth a thousand words, two snapshots of the area will save some paper:



The Entrance Threshold                    The Bathroom Threshold

([Doc. 42 at 3](#)).  Strickler says he tripped over the Entrance Threshold; Walmart claims he fell after passing that point.  This matters because what those pictures don't show is about a half-inch lip (or offset) between the concrete and tile at the Entrance Threshold. Measurements of the lip revealed its condition violates the ADA.[2]

Nobody else saw Strickler fall.  Nor did any camera record the incident.  But after it happened, witnesses rushed over to help.  They all testified Strickler's upper body was over the Bathroom Threshold (inside the restroom) with his legs sticking out of the doorway.  Besides the lip, the walkway was clear of any debris, liquid, or other obstacles.

---

[2] Where relevant, it appears the ADA, Florida building or accessibility codes, and safe walking guidelines (ASTM 1637) have identical specifications.  (Docs. 37-4 at 28-30; 37-6 at 26-28; 37-7 at 11-15).  When referencing these facts below, the Court uses the ADA as shorthand for all three.

**LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The moving party bears the initial burden to show the lack of genuinely disputed material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  At this stage, courts must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

**DISCUSSION**

Preliminarily, Strickler named the wrong Walmart entity as Defendant.  (Doc. 38 at 1).  It does not appear Walmart objects to substituting the proper entity.  So within fourteen days, the Court directs the parties to file a joint notice on whether "Wal-Mart Stores East, LP" should be substituted as Defendant.  Moving onto the merits, the Court starts with the parties' *Daubert*[3] motions before turning to summary judgment.

**A. *Daubert* Motions**

In federal court, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" when,

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

---

[3] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Judges act as "gatekeepers" for expert testimony—engaging in a "rigorous" test to determine whether (1) the expert is qualified; (2) the methodology is reliable; and (3) the methodology is correctly applied to assist the factfinder.  *E.g.*, *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005) (citation omitted).  "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence."  *Id.* at 1292.

1. *Motion to Exclude Hansen (Doc. 37)*

Walmart challenges Strickler's expert, Randolph Hansen.  Hansen took measurements of the Entrance Threshold and offered opinions on ADA compliance along with causation of Strickler's fall.

To start, Walmart moves to strike Hansen because Strickler did not disclose him or provide his complete report.  Strickler timely identified Hansen as an expert in architecture, construction, code interpretation, human factors, and ergonomics on safe walking surfaces.  (Doc. 37-3).  That disclosure contained Hansen's expert report with causation opinions.  And Walmart deposed Hansen afterward.  The Court, therefore, finds the disclosure sufficient to survive Walmart's Rule 37(c)(1) challenge to strike Hansen.

As to *Daubert*, the Court agrees with much of Walmart's Motion and grants it in part.  The Court grants the Motion as it pertains to Hansen's causation opinions.  For summary judgment, however, the Court will consider Hansen's testimony on measurements of the Entrance Threshold and opinions on ADA compliance.

Strickler effectively left this Motion unopposed.  His opposition amounts to a passing reference in response to summary judgment:

> Plaintiffs contest Walmart's *Daubert* Motion as to expert opinions of Randolph Hansen [DE 37] and Craig Lichtblau, M.D. [DE 36], as set forth in Plaintiffs' Statement of Material Facts and the following materials in this Memorandum.

(Doc. 41 at 18).  The rest of the response never mentions Hansen.  While the response's fact section addresses him, it does not satisfy Strickler's burden.

In response to Walmart's statement of material facts, three paragraphs refer to Hansen.  In one, Strickler agrees he disclosed Hansen as an expert, noting "additional documents and testimony" support Hansen's opinions.  (Doc. 41 at 4).  Next, Strickler agrees Hansen opined the trip occurred on the Entrance Threshold, which was not ADA compliant.  Again, there is an unexplained reference to additional evidence.  And finally, Strickler disagrees with Walmart's statement that Hansen is unqualified and used improper methodology.  Strickler's whole response follows:

> Plaintiffs disagree with the assertions of paragraph 16.  Mr. Hansen has been an architect, general contractor, and human factors expert for over 40 years.  He has qualified and has testified as an expert in cases involving issues similar to those involved in the case at bar.

(Doc. 41 at 4).  That's it.  That is Strickler's response to a detailed twenty-page *Daubert* motion.  Perhaps his short response is enough to say Hansen is qualified to opine on architecture or ADA compliance.  Yet for causation of Strickler's fall, this does not show Hansen is qualified or used a reliable and helpful methodology.  As it is Strickler's burden to make that showing, the Motion must be granted on that basis.

As Walmart outlines, there are questions about Hansen's qualification, reliability, and helpfulness for causation.

First, Hansen is not qualified to opine on causation.  He is not an expert in biomechanics, human factors, or accident reconstruction.[4]  Most of his experience is in designing buildings and recognizing code violations.  But Strickler does not show how that qualifies Hansen as an expert on what caused a trip and fall.  At his deposition, Hansen said his experience qualifies him.  (Doc. 37-5 at 16).  Yet when an expert "is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (citation omitted).  Hansen did not provide that explanation.  Nor has Strickler.

Second, Hanson's opinion on causation is unreliable.  To start, Hansen did not prepare his report.  Rather, Strickler's lawyer drafted it while on the phone with Hansen.  (Doc. 37-4 at 23).  Next, Hansen's causation opinions rely on Strickler's testimony.  Yet Hansen never heard Strickler's testimony before forming his opinions.  (Doc. 37-4 at 24-26).  Instead, he depended on what Strickler's lawyer told him about the fall.[5]  (Doc. 37-4 at 24-26).  What is more, Hansen had no idea about Strickler's path towards the bathroom or where along the Entrance Threshold the trip supposedly occurred.  (Doc. 37-5 at 17).  A few times in his deposition, Hansen said it was "virtually impossible" for the Bathroom Threshold to cause the fall.  (Doc. 37-5 at 15-16).  Hansen never explained why or how it was impossible.  So the opinion that the Entrance Threshold caused the fall is based on his assumption (with no data or methodology) it was the cause.  (Doc. 37-5 at 15).  This

---

[4] While offered as an expert in human factors, nothing from Hansen's report or deposition supports the conclusion he is an expert in the field that could opine on causation.

[5] Later, Hansen reviewed the testimony and decided it did not change his conclusions.  (Doc. 37-4 at 25).

Court's job as gatekeeper "requires more than simply taking the expert's word for it." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005) (internal quotation marks and citation omitted).  So the Court will not just assume Hansen's opinion is reliable with nothing to support it.

Crucially, the Court doubts Hansen even has an expert methodology for causation.  According to Hansen, his entire causation opinion is based on the Entrance Threshold's noncompliance with the ADA and Strickler saying he tripped over that threshold.  (Doc. 37-5 at 15-19).  When asked his methodology, Hansen conveyed he simply compared his measurements to ADA requirements.  (Doc. 37-5 at 20-21).  But that is not a causation methodology.  Whether the Entrance Threshold complied with the ADA is not dispositive on causation in a negligence case.  Even if the threshold were ADA complaint, it still could have caused a trip and fall.  The ADA does not prohibit uneven floors; it simply requires level changes with nonbeveled edges to be less than a quarter inch and beveled edges below half an inch.  (Doc. 37-6 at 27-28).  To be sure, the height of the threshold lip could be relevant for calculations analyzing and reconstructing the incident.  Yet there is no suggestion Hansen did that.  He simply determined the lip was ADA noncompliant and opined it caused the fall because Strickler said it did.

At bottom, Hansen's causation testimony is no more than pure *ipse dixit* that does not show reliability.  *See Frazier*, 387 F.3d at 1261.

And third, Hansen's causation opinion is unhelpful.  No part of Hansen's opinion is "beyond the understanding of the average lay person."  *Frazier*, 387 F.3d 1262.  A regular juror is perfectly capable of deciding whether Strickler tripped over the Entrance Threshold based on his testimony and the other evidence.  Hansen's causation opinion

just adds an expert stamp on Strickler's story.  Along with being unhelpful, Hansen's opinion has the potential to mislead or confuse the jury.  Lay juries may assign expert testimony "talismanic significance."  *Id.* at 1263.  So putting Hansen on the stand to give his "expert" causation opinion with no reliable methodology or support risks misleading the jury.

The Court, however, will not completely preclude Hansen's testimony.  Any person with a ruler can measure the lip on a doorway threshold.  So the Court does not exclude Hansen's testimony about the measurements because he could give that a regular fact witness.  *See Goins v. Royal Carribean Cruise, Ltd.*, No. 16-21368-CIV-WILLIAMS/SIMONTON, 2017 WL 5891469, at *6 & n.5 (S.D. Fla. May 31, 2017) (excluding trip-and-fall causation testimony as an expert but allowing measurement testimony as a fact witness).  What is more, Walmart does not challenge Hansen's ADA compliance opinions.  So the Court considers those for summary judgment.  If necessary, Walmart can renew the *Daubert* motion on that basis at trial.  Thus, the Motion (Doc. 37) is granted in part.

### 2. Motion to Exclude Joganich *(Doc. 39)*

Strickler moves to exclude or limit the testimony of Walmart's expert, Timothy Joganich.  Joganich offered an expert opinion—concluding the Entrance Threshold did not cause the fall and the actual cause of the fall is unclear.

To start, Joganich is qualified.  While Strickler makes no argument on this prong, Walmart points to various education and experience supporting Joganich's qualifications to opine on causation.

Next, the methodology is reliable.  Strickler argues Joganich ignored the height of the Entrance Threshold and conflicting testimony on Strickler's position after the fall. Moreover, says Strickler, the report relates none of the cited scientific principles to the analysis.  Yet as the report and deposition show, Joganich considered all evidence and testimony in the case relevant to his opinions.  Joganich explained it was unnecessary to consider the height of the lip because his analysis assumed it caused the fall.  Using biomechanical and kinesiological principles, Joganich still concluded Strickler could not have tripped on the Entrance Threshold given the testimony on Strickler's position after the fall and the area's dimensions.  This even considered the first witness slightly moving Strickler and the conflicting testimony about whether Strickler's legs were sticking straight out the door or back towards the Entrance Threshold.  As to the scientific principles applied, the report relied in part on Newton's basic laws of motion.  Those have been scientific gospel for the better part of three-and-a-half centuries.  And in his deposition, Joganich further detailed how he applied those principles.  Finally, Joganich addressed the other factors that could have affected Strickler's fall like stumbling and hitting the door jam, explaining why they did not change his opinion.  In short, Walmart met its burden to show Joganich applied a reliable methodology to the facts.  *See Berner v. Carnival Corp.*, 632 F. Supp. 2d 1208, 1214-15 (S.D. Fla. 2009) (holding Newton's laws were a reliable methodology that an expert correctly applied).

Finally, the methodology is helpful.  Much of Strickler's argument on this basis again attacks the opinion's reliability instead of its helpfulness or fit with the relevant inquiry.  But as Walmart shows, the opinion was reliably applied in a way that will help the jury.  Indeed, this case possibly hinges on whether it was possible for Strickler to trip over

the Entrance Threshold and wind up halfway inside the bathroom.   Joganich's opinion (based on kinetics, biomechanics, and physics principles outside the average person's knowledge) helps to determine that question.   *See Rockhill-Anderson v. Deere & Co.*, 994 F. Supp. 2d 1224, 1241 (M.D. Ala. 2014) (holding an expert opinion on basic Newtonian physics was helpful).

At bottom, Strickler simply disagrees with Joganich's conclusion.   But probing that disagreement is tailored for cross examination, not a *Daubert* motion.   *See Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011).   Walmart met its burden, and the Motion (Doc. 39) is denied.

### 3.  Motion to Exclude Lichtblau (Doc. 36)

Finally, Walmart moves to strike or limit the testimony of Dr. Craig Lichtblau. Strickler also failed to oppose this Motion fully, just touching on it in response to summary judgment.   But the minimal briefing on this issue is enough to survive the Motion. Lichtblau is Strickler's expert on defining impairment, disability, and cost for medical care as they relate to the fall.   As part of his report, Lichtblau offered opinions on medical causation, which Walmart challenges.

Walmart moves to exclude under *Daubert* for unreliability.   Although Walmart does not challenge Lichtblau's qualifications or helpfulness, his report, deposition, education, and experience all support those factors.[6]   On reliability, Walmart says Lichtblau's medical causation opinion is unreliable because he never examined Strickler or reviewed his medical records before the fall.   However, Lichtblau took some preexisting medical history into account in the report.   Lichtblau also clarified that information was irrelevant to his

---

[6] In passing, Walmart states Lichtblau is unqualified without explanation.   Yet the record shows Lichtblau has been an expert medical witness in hundreds of cases, opining on these types of matters.

causation opinion for the subject injury.  (Doc. 36-2 at 25).  And while not addressed by Walmart, Lichtblau detailed his peer-reviewed causation methodology.  (Doc. 36-2 at 8-9).  Thus, the *Daubert* challenge fails.

Alternatively, Walmart seeks to limit Lichtblau's testimony to the opinions disclosed in his report under Rule 37(c)(1).  Without identifying what it takes issue with, Walmart claims Lichtblau offered opinions outside the scope of his report.  The Court assumes Walmart challenges medical causation.  Importantly, however, the report contained a medical causation opinion.  (Doc. 41-17 at 15) ("It is my medical opinion as a Board Certified Physiatrist that [Strickler] has sustained a significant impairment, disability, and cost for future medical care as a direct result of the injuries sustained in a trip-and-fall accident.").  In part, Lichtblau is an expert to define impairment and disability.  As Strickler notes, Lichtblau's opinion is offered to show the extent of the injuries caused by the fall (i.e., causation is part of his role).  (Doc. 41 at 24).  The Court does not find the sanction of Rule 37(c)(1) exclusion appropriate.  Thus, the Motion (Doc. 36) is denied.

## B.  Summary Judgment

There are three state-law claims at issue: negligence, negligent mode of operation, and loss of consortium.  Sitting in diversity over those claims, this Court applies Florida substantive law and federal procedural law.  *Global Quest, LLC v. Horizon Yachts Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017).

The parties do not distinguish between negligence and negligent mode of operation.  Negligent mode of operation is a theory of negligence (focusing on the way a business operates) that eliminates the requirement for constructive knowledge.  *Khorran*

*v. Harbor Freight Tools USA, Inc.*, 251 So. 3d 962, 966 (Fla. Dist. Ct. App. 2018).[7]  Neither party addresses the difference, so it is not confronted below.

Like any negligence action, a trip-and-fall plaintiff must show duty, breach, causation, and damages.  *Oliver v. Winn-Dixie Stores, Inc.*, 291 So. 3d 126, 128 (Fla. Dist. Ct. App. 2020).  For premises liability cases, notice of the dangerous condition is also required.  *Id.*  Duty, notice, and causation are at issue.

*1. Duty*

Up first is the legal duty.  Nobody disputes Strickler was an invitee at Walmart. Businesses owe invitees two duties: "(1) to use reasonable care in maintaining the premises in a reasonably safe condition and (2) to give the invitee warning of concealed perils which are or should be known to the property owner, and which are unknown to the invitee and cannot be discovered by him through the exercise of due care."  *Collins v. Marriott Int'l, Inc.*, 749 F.3d 951, 957 (11th Cir. 2014) (alterations accepted and citation omitted).  Certain "conditions are so obvious and not inherently dangerous that they can be said, as a matter of law, not to constitute a dangerous condition, and will not give rise to liability."  *Dampier v. Morgan Tire & Auto, LLC*, 82 So. 3d 204, 206 (Fla. Dist. Ct. App. 2012).  Generally, uneven floor levels fall into that category.  *Middleton v. Don Asher & Assocs., Inc.*, 262 So. 3d 870, 872 (Fla. Dist. Ct. App. 2019) (collecting cases).

It is unclear whether Strickler claims a breach of both duties.  Certainly, Strickler contends Walmart had a duty to maintain.  Yet Strickler's briefing never mentions Walmart's duty to warn.  And the Complaint merely alleges Walmart breached its duty to

---

[7] Slip-and-fall plaintiffs cannot recover on this theory anymore.  *E.g.*, *Maltese v. Burlington Coat Factory Direct Corp.*, No. 2:19-cv-616-FtM-38MRM, 2019 WL 5391392, at *2 (M.D. Fla. Oct. 22, 2019).  But this case is not a slip and fall involving transitory foreign substances.  So the theory is not barred.  *See Khorran*, 251 So. 3d at 966-67, 966 n.2.

maintain a safe walkway by failing to warn Strickler.  This is an important distinction, yet the pleading and briefing are sketchy on it.  Even so, the Court can conclude Walmart would be entitled to judgment for negligence premised on a duty to warn—but not the duty to maintain.

As to its legal duty, Walmart argues the Entrance Threshold is not a dangerous condition so there is no liability.  Florida case law is clear: "steps, a change in floor levels, and even uneven flooring are so open and obvious that they do not constitute negligence as a matter of law." *White v. W.G. Parcel B. LLC*, No. 6:15-cv-867-Orl-22KRS, 2016 WL 9525667, at *4 (M.D. Fla. Nov. 29, 2016) (collecting cases).  Like most legal principles, there are exceptions.  *Sanford Omni Hotels Mgmt. Corp.*, 762 F. App'x 818, 822 (11th Cir. 2019) (discussing uncommon mode or design and optical illusion).  But those are not relevant here, and no party made argument about them.

Here, the Entrance Threshold was an open and obvious change in floor level. While Strickler argues the lip was not obvious because it is hard to see, that is insufficient to establish an exception to the rule.  *See id.*  So—to the extent that Strickler alleges Walmart had a duty to warn—that claim fails as a matter of law.  *See Contardi as Next Friend of B.C. v. Fun Town, LLC*, 280 So. 3d 1114, 1116 (Fla. Dist. Ct. App. 2019) (holding there was no duty to warn about open and obvious change in floor level); *Leon v. Pena*, 274 So. 3d 410, 412-13 (Fla. Dist. Ct. App. 2019) (same); *see also Leroux v. NCL (Bahamas) Ltd.*, 743 F. App'x 407, 409-10 (11th Cir. 2018) (same).

But here's where that distinction comes into play.  Florida courts are careful to distinguish between the duty to warn and duty to maintain.  *E.g.*, *Burton v. MDC PGA Plaza Corp.*, 78 So. 3d 732, 734 (Fla. Dist. Ct. App. 2012).  "While the fact that a danger

is obvious discharges a landowner's duty to warn, it does not discharge the landowner's duty to maintain his premises." *De Cruz-Haymer v. Festival Food Market, Inc.*, 117 So. 3d 885, 888 (Fla. Dist. Ct. App. 2013). As one case put it, "courts generally agree that the obvious danger doctrine does not apply when negligence is predicated on breach of the duty to maintain the premises in a reasonably safe condition." *Aaron v. Palatka Mall, L.L.C.*, 908 So. 2d 574, 577-78, 577 n.1 (Fla. Dist. Ct. App. 2005) (collecting cases). So a landowner may prevail on a duty to warn theory and still be liable under a separate theory for "duty to maintain the property in a reasonably safe condition by [not] repairing conditions that they foresee will cause harm." *Middleton*, 262 So. 3d at 872.[8]

Mainly, Strickler contends the Entrance Threshold is a dangerous condition because it violates the ADA. It is well established that building code violations are evidence of negligence in trip-and-fall cases. *E.g.*, *Lindsey v. Bill Arflin Bonding Agency Inc.*, 645 So. 2d 565, 567 (Fla. Dist. Ct. App. 1994) (collecting cases). If Strickler simply contended the Entrance Threshold was a danger just because of a change in level, the outcome might be different. *See, e.g.*, *Schoen v. Gilbert*, 436 So. 2d 75, 76 (Fla. 1983) ("[A] difference in floor levels does not of itself constitute failure to use due care for the safety of a person invited to the premises." (citation omitted)). Here, however, Strickler argues the lip violates the ADA with record support. That is evidence of negligence going to Walmart's duty to maintain the premises. *E.g.*, *Krueger v. Quest Diagnostics, Inc.*, 280 So. 3d 518, 520-21 (Fla. Dist. Ct. App. 2019) ("Numerous courts have recognized that a jury in a premises liability case may consider building code provisions in determining

---

[8] Florida law is unsettled on the effect an open and obvious danger has on the duty to maintain. *See Brookie v. Winn-Dixie Stores, Inc.*, 213 So. 3d 1129, 1131-37 (Fla. Dist. Ct. App. 2017). Regardless, it is undisputed Strickler did not see the Entrance Threshold and never used the restroom before the incident. Moreover, as described below, the Entrance Threshold was a code violation.

whether a defendant complied with a common law duty of care."); *see also* 41 Fla. Jur. 2d, *Premises Liability* § 90 (2020) ("Further, where a change in levels violates the building code, liability may be imposed.").  Two recent cases are instructive.

In the first, a parking lot did not have a "curb cut" to allow access for disabled people, violating the Florida building code and ADA.  *Krueger*, 280 So. 3d at 519-20.  After tripping on the curb, plaintiff sued for negligence on a duty to maintain theory.  *Id.*  The trial court entered a directed verdict for defendant, and the Second DCA reversed.  *Id.* at 519.  The court explained that the code violations were enough evidence for breach of a duty to maintain the premises in a reasonably safe condition—meeting "the minimal threshold for the jury to consider [plaintiff's] negligence claim."  *Id.* at 520-22.

The second case is almost identical to this one.  *Gomez Cruz v. Wal-Mart Stores E., LP*, 268 So. 3d 796 (Fla. Dist. Ct. App. 2019).  There, the lip on a manhole in Walmart's parking lot exceeded the quarter inch allowed by local building codes.  *Id.* at 799.  Plaintiff tripped on the manhole and sued for negligence, alleging breach of duty to maintain.  *Id.* at 799-800.  Like *Kruger*, the Fourth DCA held evidence of the code violation presented a genuine dispute over the dangerous condition of the manhole.  *Id.* at 800.  The case also presented a factual question on whether Walmart should "have anticipated that the manhole would cause injury despite its obviousness."  *Id.* at 801.

Similarly, Strickler offered evidence the Entrance Threshold violated the ADA—the lip has a nonbeveled edge over half an inch.  Hansen offered an opinion on ADA compliance.  And Walmart disputes the Entrance Threshold violates the ADA.  (Doc. 38-34 at 6-7).  Unlike *W.G. Parcel*, where a code violation did not contribute to the trip and fall, the ADA violation here is directly related to the allegedly dangerous condition causing

Strickler's fall.  *See* 2016 WL 9525667, at *4.  So there a genuine dispute on Walmart's duty to maintain the store in a reasonably safe condition—specifically whether the Entrance Threshold was a dangerous condition and Walmart should have anticipated the harm.  *Gomez Cruz*, 268 So. 3d at 799-801; *Krueger*, 280 So. 3d at 520-22; *Parker v. Shelmar Prop. Owner's Ass'n*, 274 So. 3d 1219, 1221 (Fla. Dist. Ct. App. 2019); *but see Ramsey v. Home Depot U.S.A., Inc.*, 124 So. 3d 415, 418 (Fla. Dist. Ct. App. 2013) (holding no duty to maintain when the alleged dangerous condition was ADA complaint).

   *2.  Notice*

   Next, Walmart argues it had no notice of the condition.  Strickler counters there was constructive notice.

   A plaintiff must prove the business owner "had actual or constructive notice of the dangerous condition."  *Grimes v. Family Dollar Stores of Fla., Inc.*, 194 So. 3d 424, 427 (Fla. Dist. Ct. App. 2016).  There is no indication Walmart had actual notice of the Entrance Threshold's lip through complaints or previous incidents.  But constructive notice is another matter.  Unlike actual knowledge, "Constructive knowledge may be inferred if a dangerous condition existed for such a length of time that in the exercise of reasonable care the condition would have been known to the defendant."  *Grimes*, 194 So. 3d at 427-28.  The Entrance Threshold is not a transitory or temporary condition.  Rather, it is a permanent aspect of the store.  While nobody could say for sure how long it existed, the only testimony on the issue revealed the Entrance Threshold was unchanged for at least months.  (Doc. 41-1 at 6, 12).  This is evidence of a substantial length of time in which Walmart apparently failed to notice the half-inch lip in the walkway to its restroom.

Walmart attempts to distinguish *Grimes*.  There, evidence of trampled dirt where rebar stuck out of the ground raised a genuine dispute over constructive notice that people used the landscaped area as a walkway.  That is a distinction without a difference.  The walkway here allowed restroom access.  In other words, it was a path Walmart intended and knew customers would use.  So unlike *Grimes*, Strickler need not present evidence Walmart should have known people were walking over the Entrance Threshold.  Rather, the relevant inquiry is whether the condition existed for long enough that Walmart (exercising reasonable care) would have known about it.

Drawing all reasonable inferences for Strickler, the Court concludes a genuine issue exists on whether Walmart had constructive knowledge of the condition.  *See Grimes*, 194 So. 3d at 427-29; *Morse v. Home Depot U.S.A., Inc.*, No. 9:18-CV-81011-ROSENBERG/REINHART, 2019 WL 2008588, at *3-4 (S.D. Fla. Mar. 19, 2019).

*3. Causation*

For its final negligence argument, Walmart contends there is no evidence of legal or medical causation.  The Court tackles legal cause first.

A plaintiff must show "that the defendant's negligence was a proximate cause of the plaintiff's injury." *Las Olas Holdings Co. v. Demella*, 228 So. 3d 97, 102 (Fla. Dist. Ct. 2017) (alterations accepted and citation omitted).  "Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiff's injury." *Mount Sinai Med. Ctr. of Greater Miami, Inc. v. Gonzalez*, 98 So. 3d 1198, 1204 (Fla. Dist. Ct. App. 2012) (quoting *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1985)).  The "mere possibility of causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best

evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."
*Id.* at 1202 (alteration accepted) (quoting *Gooding*, 445 So. 2d at 1018).

Here, there is a genuine issue of material fact on legal causation. In no uncertain
terms, Strickler testified he tripped over the Entrance Threshold (i.e., the lip caused the
fall). (Docs. 38-2 at 48-50; 38-3 at 1-3). Walmart challenges Strickler's testimony,
contending it is speculative and self-serving. But there is nothing speculative about
Strickler's story on causation. He plainly said he tripped over the Entrance Threshold.
As to Strickler's testimony being self-serving, that is a nonissue. *See Feliciano v. City of
Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013). A "litigant's self-serving statements
based on personal knowledge or observation can defeat summary judgment." *United
States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018). Typically, "a plaintiff's testimony
cannot be discounted on summary judgment unless it is blatantly contradicted by the
record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to
facts that could not have possibly been observed or events that are contrary to the laws
of nature." *Feliciano*, 707 F.3d at 1253. None of those situations are present. Nobody
else saw the fall to contradict Strickler's story. And to the extent that Walmart relies on
Joganich, his expert opinion simply rebuts Strickler. Joganich offers no calculation or
model to exclude the possibility of Strickler tripping on the Entrance Threshold. Moreover,
Joganich's opinion is based, in part, on his interpretation of Strickler's and other
witnesses' testimony, from which a reasonable jury could draw different inferences.

For the Court to believe or disbelieve Strickler would entail improperly weighing
the evidence and making credibility calls. *E.g.*, *Alves v. Bd. of Regents of the Univ. Sys.
of Ga.*, 804 F.3d 1149, 1159 (11th Cir. 2015) (At summary judgment, judges "do not weigh

conflicting evidence or make credibility determinations."). Because there is a genuine dispute of material fact on legal causation, a jury must decide the issue.

Moving onto medical causation, Walmart failed to show it is entitled to judgment as a matter of law. Strickler testified the fall caused his injuries. (Docs. 38-2 at 30; 38-3 at 3). And Lichtblau offered an expert opinion on medical causation. What is more, the facts are enough to at least raise a genuine dispute on medical causation. Strickler walked into Walmart without pain and (presumably) without broken bones. Then, he fell, experiencing severe pain from a broken femur. The most reasonable inference from those facts is the fall caused at least some of Strickler's injuries. To be sure, Strickler had preexisting health issues, including a hip replacement where his femur fractured. So there may be disputes about whether the fall caused the full extent of injuries. But medical experts, like Lichtblau, can help the jury resolve those questions.

Thus, the Court concludes there is a genuine dispute of material fact on causation.

*4. Loss of Consortium*

At last, Walmart argues the loss of consortium claim fails because it is derivative of the negligence claim. Because summary judgment is denied on the other claims, it is inappropriate on this one too. *Swofford v. Eslinger*, 686 F. Supp. 2d 1277, 1290 (M.D. Fla. 2009).

For all those reasons, summary judgment is inappropriate.

Accordingly, it is now

**ORDERED:**

1.  Defendant's Motion to Strike and/or *Daubert* Motion to Preclude the Testimony and Opinions of Plaintiff's Expert, Randolph Clifford Hansen (Doc. 37) is **GRANTED in part**.

2.  Plaintiff's *Daubert* Motion to Preclude Expert Testimony of Timothy G. Joganich (Doc. 39) is **DENIED**.

3.  Defendant's *Daubert* Motion/Motion to Strike/Limit Expert Testimony (Doc. 36) is **DENIED**.

4.  Defendant's Motion for Summary Judgment (Doc. 38) is **DENIED**.

5.  The parties are **DIRECTED** to file a joint notice on whether "Wal-Mart Stores East, LP" can be substituted as Defendant **on or before May 22, 2020**.

**DONE** and **ORDERED** in Fort Myers, Florida this 8th day of May, 2020.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Copies:  All Parties of Record